**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| ADREIONA JENNINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 26 C 4712 |
| | ) | |
| UCAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Adreiona Jennings brings this action against her former employer, Defendant UCAN, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Before the Court is UCAN's motion to dismiss Jennings's first amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, UCAN's motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from Jennings's first amended complaint and presumed true for purposes of this motion. All reasonable inferences are drawn in Jennings's favor.

Jennings, who suffers from anxiety and depression, worked for UCAN as a Program Manager from December 7, 2015, until her termination on April 26, 2024. As a Program Manager, Jennings oversaw program operations, managed program staff, and ensured compliance with organizational policies and procedures. UCAN was aware Jennings suffered from anxiety and depression.

On or about June 23, 2023, Jennings began FMLA leave for fibroid surgery. She returned to work in September 2023, performing her job without any accommodation. Upon her return, however, Jennings discovered that a male employee had been hired into her Program Manager position at a higher pay rate, and Jennings was demoted from Program Manager to Coordinator without explanation.

Between October 2023 and January 2024, Jennings repeatedly attempted to follow up with Human Resources ("HR") regarding her title change, but HR failed to respond until a new HR Vice President was hired in January 2024.

In a February 2024 meeting with Jennings, her director and associate director, and two HR representatives, it was agreed that Jennings's title would be restored to Program Manager. Jennings asked about the pay differential between her salary and the salary of the male employee who was hired into her position. HR said it would follow up but never did.

In April 2024, Jennings requested leave for mental health reasons related to her anxiety and depression. In connection with this request, HR personnel subjected Jennings to intrusive questioning and made comments such as "you do not look like

you suffer from mental health issues" and "you do not look depressed," and questioning the legitimacy of Jennings's treating therapist. Dkt. # 10, ¶ 37. Nevertheless, Jennings was granted paid medical leave for mental health reasons from April 12, 2024, through May 27, 2024.

On or about April 15, 2024, UCAN called Jennings into a meeting and subjected her to an approximately one-and-a-half-hour interview regarding an internal investigation concerning finances related to a grant for which Jennings was responsible. The events in question allegedly occurred between July 2023 and December 2023.

On April 23, 2024, UCAN disabled Jennings's work phone and email access and, on May 10, 2024, Jennings learned from a co-worker that she had been terminated. Jennings later received a formal letter stating her employment was terminated effective April 26, 2024, purportedly due to alleged misuse of company funding. UCAN claimed Jennings used grant funds for purposes other than those specified, but Jennings says her purchasing decisions went through a three-tier approval process, and she maintained receipts for all expenditures.

On July 9, 2024, Jennings filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The Charge stated:

> I began my employment with Respondent on or about December 7, 2015. My most recent position was Program Manager. During my medical leave, I was demoted, and my replacement was hired at a higher salary. I complained to Respondent. On or about April 26, 2024, I was discharged.

> I believe I have been discriminated against due to my sex, Female, and retaliated against for engaging in protected activity, in violation of [Title VII].
>
> I believe I have been discriminated against due to my disability, and retaliated against for engaging in protected activity, in violation of [the ADA].

Dkt. # 10-1, at 2. The EEOC issued a determination letter finding "reasonable cause" to believe UCAN discriminated against Jennings because of her disability and sex, and "in retaliation for engaging in protective activity by being demoted, paid less than a similarly situated male co-worker who replaced her and discharged, in violation of the ADA and Title VII." Dkt. # 10-3, at 2.

Jennings received her Notice of Right to Sue letter from the EEOC on January 27, 2026, and timely filed suit in federal court. Her seven-count amended complaint brings claims for: disability-based discrimination and harassment in violation of the ADA, retaliation in violation of the ADA, sex-based discrimination and retaliation in violation of Title VII, and FMLA interference and retaliation.

UCAN moves for dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing Jennings's ADA claims are unexhausted because they exceed the scope of the Charge of Discrimination Jennings filed with the EEOC. UCAN also contends Jennings has impermissibly split her claims because she has two state law wage claims against UCAN pending with the Illinois Department of Labor ("IDOL").[1]

---

[1] UCAN attached to its motion to dismiss two employer notices of wage claims filed with the IDOL. One notice, dated January 28, 2025, seeks $6,000 from September 18, 2023, through January 31, 2024. Dkt. # 16-1. The other notice is dated November 13, 2024, and seeks $30,000

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will accept "well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but [will] not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). For these reasons, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quoting *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021)).

---

from October 12, 2024 (the date she returned from medical leave and discovered she had been demoted), and April 26, 2024 (the date of her termination). Dkt. # 16-2.

## DISCUSSION

### I. Failure to Exhaust

Before bringing a claim in federal court under the ADA or Title VII, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) (ADA); *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (Title VII). Specifically, a plaintiff may not raise any claims that were not "originally included in the charges made to the EEOC." *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). This exhaustion requirement aims to give the EEOC and employer notice of an employee's grievances and an opportunity to resolve the dispute. *See Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015). The Court must read an EEOC charge liberally, especially where, as here, the complainant was not represented by counsel at the time she filed the charge. *See Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). Accordingly, a plaintiff may raise claims in court that are "like or reasonably related" to the allegations included in the EEOC charge. *Jenkins v. Blue Cross Mut. Hosp. Ins.*, 538 F.2d 164, 167 (7th Cir. 1976) (citation modified).

The analysis focuses on whether there is a "reasonable relationship between the allegations in the charge and the claims in the complaint" and whether "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Chaidez*, 937 F.3d at 1004 (citation modified); *see also Brindley v. Target Corp.*, 761 F. Supp. 2d 801, 806 (N.D. Ill. 2011) ("But that statement

of scope does not act as a straitjacket, for a plaintiff may also bring claims 'that are like or reasonably related to the allegations of the charge and growing out of such allegations.'" (citation omitted)). In effect, the Court looks to the factual relationship among the claims; at a minimum, the charge and the complaint must describe the "*same conduct* and implicate the *same individuals*." *Id.* (emphasis in original) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)). Whether claims fall within the scope of an EEOC charge is a question of law. *See Moore v. Vital Prods., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011).

Again, Jennings's EEOC Charge of Discrimination reads:

> I began my employment with Respondent on or about December 7, 2015. My most recent position was Program Manager. During my medical leave, I was demoted, and my replacement was hired at a higher salary. I complained to Respondent. On or about April 26, 2024, I was discharged.
>
> I believe I have been discriminated against due to my sex, Female, and retaliated against for engaging in protected activity, in violation of [Title VII].
>
> I believe I have been discriminated against due to my disability, and retaliated against for engaging in protected activity, in violation of [the ADA].

Dkt. # 10-1, at 2.

UCAN argues that Jennings failed to exhaust her ADA claims in Counts I through III because those counts are not factually connected to the allegations in Jennings's EEOC Charge of Discrimination. More specifically, UCAN asserts that Counts I through III allege disability discrimination based on Jennings's April 2024

request for mental health leave, but her Charge refers to a single leave period—the June through September 2023 leave period taken for her fibroid surgery.

Jennings argues in response[2] that her EEOC Charge "did not limit her disability to any single diagnosis" and did not specify whether her "'medical leave' referred to her June 2023 fibroid surgery leave, her April 2024 mental health leave, or both." Dkt. # 20, at 6–7. Nor did the Charge state that her discharge was unrelated to her request for medical leave. This is hardly a persuasive argument. In making it, Jennings advocates for a "standard whereby the *fewer* facts included in the EEOC charge, the *more* claims a plaintiff can raise in the district court," which courts have declined to impose. *Ferizovic v. Hilton Hotels Rosemont*, 2025 WL 2962627, at *4 (N.D. Ill. Oct. 20, 2025) (cleaned up).

More persuasively, though, Jennings contends that the temporal proximity between the April 2024 medical leave and her April 26, 2024 termination "reasonably suggests that the discharge was retaliatory and discriminatory—precisely the conduct alleged in Counts I through III." *Id.* at 7. Jennings further says the EEOC's reasonable cause determination supports her position; the EEOC did not limit its determination to only the June 2023 leave—it addressed the "full course of discriminatory conduct,"

[2] The Court would be remiss if it did not point out that, in the five pages of Jennings's response brief discussing the exhaustion issue, the only case law cited is where Jennings sets forth the black letter law and applicable standards for exhaustion. This deficiency alone would be enough to deem her arguments waived. *See, e.g.*, *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Jennings should be careful not to repeat this mistake in future briefing.

demonstrating that the EEOC "understood the charge to encompass Jennings's entire experience of disability-based discrimination, retaliation, and discharge." *Id.*

Although it is a close call, the Court concludes that Jennings properly exhausted her ADA claims in Counts I and III, but not her disability-based harassment claim in Count II. As previously noted, one of the primary objectives of the exhaustion requirement is to give the EEOC and employer notice of an employee's grievances and an opportunity to resolve the dispute. Here, Jennings has provided "minimally adequate factual specificity to allow the EEO office to conduct an investigation." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1100 (7th Cir. 2013). The Charge begins with Jennings's demotion while on medical leave and ends with her termination, when she was on mental health leave. It attributes these adverse actions to unlawful gender and disability discrimination and retaliation. Given the close temporal proximity of the events, the ADA discrimination and retaliation claims raised in amended complaint could reasonably be expected to grow out of an EEOC investigation of the allegations in the Charge.

The same cannot be said, however, for Jennings's disability-based harassment claim in Count II. The allegations in Jennings's Charge offer very little specificity and certainly do not recount any of the purported harassment Jennings experienced. Even construing the Charge broadly, the Court cannot conclude the disability-based harassment claim is reasonably related to the allegations in the Charge. The Charge must actually "*make* allegations" about harassment to do that. *Surgit v. City of Chicago*,

2021 WL 1192674, at *4 (N.D. Ill. 2021) (emphasis in original); *see also Dunn v. Cook Cnty.*, 816 F. Supp. 3d 858, 867 (N.D. Ill. 2026) (finding failure to exhaust her remedies as to a hostile work environment claims "because the EEOC charge does not allege any of the harassment or abuse on which those claims are based."); *Flemming v. United Parcel Serv.*, 2004 WL 2314962, at *4 (N.D. Ill. 2004) (finding failure to exhaust a hostile work environment claim where the plaintiffs' "EEOC charges contain no language remotely suggesting they endured a hostile environment.").

Even if the claim was properly exhausted, dismissal is still required. To state an ADA hostile work environment claim, Jennings must allege facts supporting a workplace that is permeated with discriminatory intimidation, ridicule, and insults (all based on her disability) that are sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 851 (7th Cir. 2019). The inquiry considers the totality of the circumstances, including the frequency and severity of the conduct, whether the conduct was threatening or humiliating, and whether it interfered with work performance. *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 625–26 (7th Cir. 2018).

The amended complaint falls short. The factual allegations supporting Jennings's disability-based harassment claim consist of a single meeting where HR personnel subjected Jennings to "intrusive and discriminatory questioning" and commented that Jennings did not look depressed. Jennings argues that she need not prove severity or pervasiveness at this stage; she need only allege facts that make the

claim plausible. This is true. However, the Court cannot reasonably infer harassment that was severe or pervasive from these facts alone. Count II is dismissed.

## II. Claim Splitting

UCAN next argues the first amended complaint must be dismissed in its entirety because Jennings has Illinois Wage Payment and Collection Act ("IWPCA") claims against UCAN pending with the IDOL and is thus guilty of impermissible claim splitting.

The law on claim splitting is part of the law of *res judicata*. *See Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011); *Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir. 2008). The rule against claim splitting prohibits a plaintiff from bringing a new case raising issues arising out of the same transaction or occurrence as an earlier case, when those issues could have been raised in the first litigation. *Rexing Quality Eggs v. Rembrandt Enters., Inc.*, 953 F.3d 998, 1002 (7th Cir. 2020); *see also Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988) (discussing that under the rule against claim splitting, a plaintiff must allege in one proceeding all claims for relief arising out of a single nucleus of operative facts, or be precluded from raising those claims in the future). Both claim splitting and claim preclusion promote judicial economy and discourage duplicative litigation, but "'*res judicata* focuses on protecting the finality of judgements,'" whereas "'claim splitting is more concerned with the district court's comprehensive management of its docket.'" *Telamon Corp. v. Charter Oak Fire Ins. Co.*, 2016 WL 67297, at *2 (S.D. Ind. 2016, *aff'd* 850 F.3d 866 (7th Cir.

2017) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011)). Furthermore, claim splitting is an affirmative defense, typically unsuited for resolution on a motion to dismiss. *See Stelmokas v. Bank of America, N.A.*, 819 F. App'x 441, 443 (7th Cir. 2020); *Blue Note, Inc. v. City of Chicago*, 2025 WL 2762601, at *6 (N.D. Ill. 2025).

Although UGN's claim splitting arguments carry some weight, the Court, in the exercise of its discretion, declines to dismiss the amended complaint on this basis. *See Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 688, 697 (7th Cir. 2022) (claim splitting allows the court to exercise discretion in determining whether dismissal is warranted); *Champ v. Simmon*, 2020 WL 584083, at *2 (S.D. Ill. 2020) (issues of claim splitting and judicial economy are discretionary actions, and "district courts are given latitude to exercise that discretion."). UGN is free to raise the argument again at summary judgment.

## **CONCLUSION**

For the foregoing reasons, UCAN's motion to dismiss [15] is granted in part and denied in part. Count II is dismissed. A telephonic status hearing is set for December 15, 2026, at 10:05 a.m.

It is so ordered.

Charles P. Kocoras

Charles P. Kocoras
United States District Judge

Date: October 30, 2026